UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FRANKENMUTH INSURANCE COMPANY *et al.*,

Plaintiffs,

v.

ADT LLC,

Defendant.

CAUSE NO. 3:25cv741 DRL-SJF

OPINION AND ORDER

Lindy's, Inc., which does business as Juday Creek Golf Course, and its insurer-subrogee Frankenmuth Insurance Company sued ADT LLC, alleging the security company failed to notify Juday Creek and the local fire department when its clubhouse caught fire. They bring claims for negligence and gross negligence (count 1), breach of contract and warranty (count 2), actual fraud (count 3), and constructive fraud (count 4). ADT moves to dismiss counts 1, 3, and 4 under Rule 12(b)(6). The court grants the motion in part.

BACKGROUND

The court accepts as true the well-pleaded allegations of the complaint and draws all reasonable inferences in the plaintiffs' favor. The clubhouse at Juday Creek Golf Course was an approximate 4,000 square foot commercial building with a banquet hall, office space, pro shop, locker rooms, and golf cart storage [4 ¶ 19]. ADT provided alarm services at the clubhouse for several years, including fire alarm and smoke monitoring [*id.* ¶ 20]. Neither side apparently possesses a copy of the services contract.

On April 16, 2024, Juday Creek was performing construction at the clubhouse that triggered the smoke detectors and alerted ADT, which then called to notify Juday Creek of the

signal [*id.* ¶ 22-23]. Juday Creek explained that construction caused the alert, so there was no need to contact the fire department [*id.* ¶ 24]. ADT advised Juday Creek that it would put the clubhouse's fire alarm system on hold for a week while construction proceeded; it placed Juday Creek's system "on test," which silenced all fire alarms and supervisory alerts [*id.* ¶ 25].

According to the complaint, ADT failed to restore Juday Creek's fire alarm system to monitor the clubhouse actively, much less to advise Juday Creek that the system remained "on test," though the company continued to accept monthly premium payments from Juday Creek for its security services [*id.* ¶ 26, 28]. Juday Creek alleges that ADT was aware the alarm system was off, and that even an ADT Activity Report reflected no fire alarm or supervisory signal activity from April 16 to September 20, 2024 [*id.* ¶ 27].

A fire ignited at the clubhouse on August 26, 2024—first discovered at 5:30 a.m. by a passerby who saw smoke emanating from the eaves [*id.* ¶ 29]. The local fire department was dispatched and arrived within ten minutes [*id.*]. Firefighters attempted entry through the front doors, but they determined that the floor was already compromised, so they took a defensive position and never entered the building [*id.*].

The complaint alleges that ADT failed to notify Juday Creek or the fire department of the smoke, fire, or any other fire alarm or supervisory condition, though ADT contacted Juday Creek ten days later to advise that it wasn't receiving a signal from the property's alarm system, unaware that the property was destroyed [*id.* ¶ 30-31]. Juday Creek suffered more than $7,000,000 in property damage, business interruption losses, and extra expenses, and claims that these losses could have been avoided or limited had ADT done its job [*id.* ¶ 32-33].

Juday Creek had an insurance policy with Frankenmuth that covered these damages. The golf course submitted a claim, and Frankenmuth provided and continues to provide

reimbursements [*id.* ¶ 34-35]. The complaint says Frankenmuth is subrogated to the rights of Juday Creek to the extent of its payments to date and in the future, and that Juday Creek has suffered and will continue to suffer damages that were and are uninsured [*id.* ¶ 36-37].

On August 12, 2025, Frankenmuth and Juday Creek (called together from here Juday Creek for short) sued ADT and various ADT affiliates in St. Joseph Superior Court. On September 2, the parties stipulated to dismiss the ADT affiliates; thus, on September 3, ADT removed the case based on diversity jurisdiction. 28 U.S.C. § 1332. This motion ensued, which thereafter became fully briefed.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

For certain claims, a complainant must not just plead claims plausibly, but with particularity. Under Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions

of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Because Rule 9(b) sets a standard for pleading without creating a vehicle for its enforcement, this heightened pleading standard is often presented through the guise of a Rule 12 motion. *See* 5A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1300 (4th ed. 2018). A pleading must identify specifics—often "the who, what, when, where, and how" of fraud or the specifics pertaining to another qualifying claim. *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739 (7th Cir. 2021); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *see also Bankers Tr. Co. v. Old Republic Ins.*, 959 F.2d 677, 683 (7th Cir. 1992).

## DISCUSSION

### A. *Negligence (Count 1).*

ADT seeks to dismiss Juday Creek's claims for negligence and gross negligence, arguing it never owed Juday Creek a common law tort duty when their contract governed their respective duties and obligations. Juday Creek responds that ADT owed both a contract-based duty and an independent tort duty, and that their contract's scope is an outstanding fact issue that shouldn't preclude a negligence claim at the pleading stage.

Ultimately to establish negligence or gross negligence, Juday Creek must show that (1) ADT owed a duty to Juday Creek, (2) ADT breached that duty, (3) Juday Creek suffered an injury proximately caused by that breach, and (4) damages. *See WEOC, Inc. v. Niebauer*, 226 N.E.3d 771, 778 (Ind. 2024).[1] "Negligence and gross negligence possess the same elements . . . , but the two torts have different definitions of what constitutes a 'breach.'" *Sims v. Humane Soc'y of St. Joseph Cnty. Ind. Inc.*, 758 F. Supp.2d 737, 751 (N.D. Ind. 2010) (citing *N. Ind. Pub. Serv. Co. v. Sharp*, 790

[1] The parties cite only Indiana authorities without debating choice of law or demonstrating any conflict, so the court follows suit. *See Tricor Auto. Grp. v. Dealer VSC Ltd.*, 219 N.E.3d 206, 216 n.7 (Ind. Ct. App. 2023); *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 963 (7th Cir. 2002).

N.E.2d 462, 465-66 (Ind. 2003)). Ordinary negligence involves the failure to exercise the duty of care, but gross negligence requires "a conscious, voluntary act or omission in reckless disregard of the consequences." *Sharp*, 790 N.E.2d at 465-66. Of course, this case sits only at the pleading stage, not at a point when a party must present proof. That said, "[w]hether a duty exists is a question of law for the court," and "[a]bsent duty, there can be no negligence." *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017).

If a duty arises from contract rather than the law, a claim predicated on its breach likewise arises in contract, not in tort. *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003); *accord Albanese Confectionery Grp., Inc. v. Cwik*, 165 N.E.3d 139, 147 (Ind. Ct. App. 2021) ("Where there is a contract, that contract defines the duty of care, if any, rather than tort law."). To the extent a plaintiff's interests are compromised "beyond mere failure to fulfill contractual obligations, a tort remedy should be available." *Estelle*, 798 N.E.2d at 173. A negligence claim is available only if "there is evidence of an independent tort that would have existed if there was no contract between the parties." *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 638 (Ind. Ct. App. 2015). A negligent breach of a contract "is not an actionable claim." *Id.*

The court considers whether Juday Creek has plausibly alleged a separate tort—with a legal duty independent of the contract—and whether that tort plausibly resulted in an injury distinct from any alleged breach of contract. *Sheaf Brock Inv. Advisors, LLC v. Morton*, 7 N.E.3d 278, 288 (Ind. Ct. App. 2014); *Lake Ridge New Tech Schs. v. Bank of N.Y. Mellon*, 353 F. Supp.3d 745, 757 (N.D. Ind. 2018) (citing *Estelle*, 798 N.E.2d at 173).

Rather curiously, the court wonders at the start whether it can surmise—as a matter of law and when today's standard requires the court to take all reasonable inferences in Juday Creek's favor—whether this pleading outlines an independent tort duty when both sides lack the written

agreement that would delineate contractual duties. Juday Creek lost its copy in the fire. ADT's reason is unknown. In short, of the fifteen alleged tort duties outlined in the complaint [4 ¶ 40], which are repackaged contract duties when the parties cannot produce the contract?

In fairness, the contract claim reiterates the same breaches that the negligence claim does [*compare* ¶ 40 *with* ¶ 44], so this pleading risks presenting the duties underlying both claims as coextensive, or with the negligence duties having copy-and-paste origins in the contract. The complaint alleges that ADT provided alarm services at the clubhouse, including "fire alarm and smoke monitoring," in exchange for monthly premium payments [*id.* ¶ 20, 26]. Though perhaps broadly outlined, this assertion sets some bounds of ADT's purported contractual duties, and many of Juday Creek's ensuing allegations might be seen to fall within these bounds. The pleading says ADT failed in its performance of certain duties—for instance, that ADT failed to test the alarm system, monitor the property for fire conditions, maintain an adequate system for fire prevention, notify Juday Creek that monitoring ceased or had become inoperative, or alert Juday Creek or the fire department of fire or supervisory conditions of concern.

But reaching this conclusion as a matter of law at the pleading stage ignores certain basic principles. Though this might not be the first sophisticated commercial contract that outlines a number of duties, assuming today that the tort duties, as alleged, all originated in the contract would subvert Juday Creek's ability to plead in the alternative—a not unimportant exercise when the parties to date have not put their fingers on the written agreement or settled between them what the contract says. Juday Creek may plead alternatively, even inconsistently. *See United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584-85 (7th Cir. 2021) (citing *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001)). In addition, drawing as the sole inference that all tort duties originate in the contract would ignore another reasonable inference that only

certain ones do, or maybe even none. That is no small matter when the complaint at times refers to other applicable codes and standards as the source of duties that could sound in tort. *See, e.g., Stachowski v. Estate of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018) (unexcused violation of statute, ordinance, or other law could support negligence claim). The court must take reasonable inferences in Juday Creek's favor, and that includes these alternative inferences. *See Reynolds*, 623 F.3d at 1146. Thus the court cannot say as a matter of law that Juday Creek offers no plausible basis for pleading a duty separate and independent of its contract with ADT, or that Juday Creek somehow pleaded itself out of court.

Other reasons exist too. Juday Creek argues that ADT retains an independent common law duty to exercise ordinary and reasonable care in its provision of fire alarm and supervisory condition monitoring services, contract notwithstanding. This is the duty imposed on businesses "to exercise ordinary and reasonable care in the conduct of their operations . . . for the safety of others whose injuries should reasonably have been foreseen or anticipated." *WEOC*, 226 N.E.3d at 778 (dram shop) (quoting *Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217, 1220 (Ind. 1988)). Though the duty may have its "roots in contract," the obligation "to observe due care may be implied from the relationship," *Flint & Walling Mfg. Co. v. Beckett*, 79 N.E. 503, 505 (Ind. 1906), or assumed gratuitously even outside the dram shop context, *see, e.g., Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1261-62 (Ind. Ct. App. 1989) (tire service). Accordingly, "a plaintiff has the option of suing in tort or in contract for the negligent performance of a contractual duty," *Strayer v. Covington Creek Condo. Ass'n*, 678 N.E.2d 1286, 1288 (Ind. Ct. App. 1997), though doing so "does not allow [a plaintiff] to avoid [any] limitation of liability [] in the contract," *Orkin Exterminating Co. v. Walters*, 466 N.E.2d 55, 58 (Ind. Ct. App. 1984), *abrogated on other grounds*, *Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind. 1998). At this stage, Juday Creek is at least entitled to

plead in the alternative, *see* Fed. R. Civ. P. 8(d)(2), and pursue this tort theory as far as is legally permissible.

Juday Creek also points to another common law duty, even if closely related—it cites precedent recognizing under Indiana law that, though a breach of contract is generally not a tort, certain tort obligations can arise from a contract. *See Gonzalez v. ADT LLC*, 161 F. Supp.3d 648, 657 (N.D. Ind. 2016) (Simon, J.). Generally, every contract for work or services includes an implied duty "to perform it skillfully, carefully, diligently, and in a workmanlike manner, and a negligent failure to observe any of these conditions [can be] a tort, as well as a breach of contract." *Id.* (citation omitted); *see Lewis v. Methodist Hosp., Inc.*, 326 F.3d 851, 853 (7th Cir. 2003) (citing *Flint & Walling*, 79 N.E. at 505; *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 576 (Ind. Ct. App. 2003)); *see also* 57A Am. Jur. 2d *Negligence* § 108 (2026). In *Gonzalez*, the plaintiff alleged ADT negligently installed, serviced, maintained, operated, and monitored the security system in her home, resulting in its malfunction when her home was invaded and the ensuing injuries. *Gonzalez*, 161 F. Supp.3d at 657-58. These facts sufficiently stated a plausible negligence claim under Indiana law, despite arguments from ADT that the duties arose solely out of the security system service contract. *Id.* at 658. Here, Juday Creek alleges that ADT neglected its overarching duty to perform its fire alarm and monitoring services reasonably, and otherwise recklessly disregarded its duties to perform its obligations—in short, that ADT failed to act skillfully, diligently, or carefully. ADT says Juday Creek cannot create new common law duties merely because it no longer possesses the contract, but this implied duty isn't new.

As a final tack-on argument, ADT says Juday Creek cannot pursue both contract and negligence claims for the same conduct because Indiana law forbids double recovery. *See INS Investigations*, 784 N.E.2d at 577 ("a party may not recover twice for the same wrong"). This may

become a concern for another day, but that day isn't today. A party may plead and sometimes even secure a trial verdict for both a contract claim and a negligence claim, though it generally cannot thereafter recover under both theories. *See id.* ("not error" for trial court to permit tort and contract theory for same wrong to proceed to jury, but plaintiffs could "not recover for both"). The scope of recovery isn't a limitation on whether Juday Creek can pursue a particular theory, and the court may not dismiss legal theories at the pleading stage regardless. *See Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025). Nothing stops Juday Creek from proceeding in tort and in contract here, and the court cannot parse the injuries or damages today. The court cannot say they are coextensive now as a matter of law. The court denies the motion to dismiss the negligence claim.

B. *Actual and Constructive Fraud (Counts 3 and 4).*

ADT next seeks to dismiss the actual and constructive fraud claims. The company says Juday Creek fails to plead them with particularity as required by Rule 9(b), that Juday Creek may not predicate accusations of fraud on a breach of contract, and that the claims impermissibly rest on representations of future conduct. In response, Juday Creek argues that it meets Rule 9(b)'s heightened pleading standard and that its fraud and contract claims cover different events.

Both actual and constructive fraud require heightened pleading under Fed. R. Civ. P. 9(b). *See, e.g.*, *Shea v. Gen. Motors LLC*, 567 F. Supp.3d 1011, 1023 (N.D. Ind. 2021) (constructive fraud); *Troth v. Warfield*, 495 F. Supp.3d 729, 739 (N.D. Ind. 2020) (actual fraud). To succeed on its actual fraud claim, Juday Creek eventually will need to establish (1) a material misrepresentation of past or existing facts by ADT, (2) which was false (3) that was made with knowledge or reckless ignorance of the falseness, (4) that was relied upon by Juday Creek and (5) that proximately caused Juday Creek injury. *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015) (quoting *Rice v.*

*Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996)). "Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008).

Juday Creek will likewise need ultimately to establish the following for its constructive fraud claim: (1) a duty owed by ADT to Juday Creek due to their relationship, (2) violation of this duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance thereon by Juday Creek, (4) injury as a proximate result, and (5) the gaining of an advantage by ADT at Juday Creek's expense. *Kapoor*, 49 N.E.3d at 124 (quoting *Rice*, 670 N.E.2d at 1284). Constructive fraud is a "breach of legal or equitable duty [that], irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Id.* at 124 (quoting *Budd v. Bd. of Comm'rs of St. Joseph Cnty.*, 22 N.E.2d 973, 975 (Ind. 1939)). It is distinguished from actual fraud in that "[n]either actual dishonesty nor intent to deceive is an essential element," *id.* (quoting *Daly v. Showers*, 8 N.E.2d 139, 142 (Ind. 1937)), and it may be predicated on "an oral promise as to future conduct," *id.* at 125 (quoting *Strong v. Jackson*, 777 N.E.2d 1141, 1149 (Ind. Ct. App. 2002)). Though often based on the existence of a fiduciary relationship, constructive fraud can also arise out of a buyer and seller relationship, as one party may possess unique knowledge not held by the other and thereby enjoy a position of superiority, invoking a duty of good faith and fair dealing. *Id.* at 125 (citing *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994)).

Under Rule 9, a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kahn v. Walmart Inc.*, 107 F.4th 585, 601-02 (7th Cir. 2024) (particularity is required when claim "sounds in fraud" or is "premised upon a course of

fraudulent conduct"). This extra burden discourages hasty accusations of fraud, which "can do serious damage to the goodwill of a business firm or a professional person." *Bankers Tr.*, 959 F.2d at 683; *see also Ackerman v. Nw. Mut. Life Ins.*, 172 F.3d 467, 469-70 (7th Cir. 1999); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (the heightened standard protects a defendant's reputation from harm, minimizes strike suits and fishing expeditions, and provides notice of the claim to the adverse party). The degree of particularity needed "depends on the facts of the case," but the rule typically "requires describing the who, what, when, where, and how of the fraud." *Kahn*, 107 F.4th at 594 (citation omitted); *accord Molina Healthcare*, 17 F.4th at 739. In the case of a misrepresentation, a pleading must include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Tr.*, 959 F.2d at 683.

The complaint alleges that ADT falsely represented to Juday Creek in an April 16, 2024 phone call that it would place the clubhouse alarm system "on test" for only a week [4 ¶ 25, 47, 54]. It also says ADT falsely represented that the alarm system was monitoring the clubhouse in May through the date of the fire by billing Juday Creek for its monitoring services and accepting payment [*id.* ¶ 26, 54]. ADT argues that the complaint skips the who, when, where, and how. Juday Creek admits it doesn't know the name of the person who called the golf course on April 16, or the names of the ADT employees responsible for billing, but it says ADT has this information, that it should be disclosed in discovery, and that the complaint otherwise pleads fraud with sufficient particularity.

A plaintiff alleging fraud must typically plead "the identity of the person making the misrepresentation." *Bankers Tr.*, 959 F.2d at 683. But the particularity requirement "must be relaxed [when the] plaintiff lacks access to all facts necessary to detail [its] claim" and when that

information "is in the hands of" the defendant. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *see also Rotella v. Wood*, 528 U.S. 549, 560 (2000) (citing *Corley* favorably in discussion of RICO cases and noting that Fed. R. Civ. P. 11(b)(3) permits "pleadings based on evidence reasonably anticipated after further investigation or discovery"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits. Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) (indicating in *dicta* that pleading sufficient context to corroborate plaintiff's fraud allegation may obviate need to identify specific employees who made purported falsehoods).

Though Juday Creek doesn't specifically identify ADT employees—and, given the absence of call logs, perhaps falls back to attributing misrepresentations to ADT the company rather than to unnamed representatives—the complaint contains ample information by which to ascertain the "who" and other particular details. A corporate form may at times satisfy the necessary level of particularity, even if less so. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). Juday Creek alleges a communication that the alarm system would be placed on hold (what), made by someone from ADT (who), through a call with the golf course (how) on April 16, 2024 (when) [*id.* ¶ 22-25]. Any falsity conveyed by continued billing (what) came from ADT or its representative (who), particularly someone responsible for sending bills from ADT to Juday Creek (how and where) in May, June, July, and August 2024 (when) [*id.* ¶ 48, 54]. Juday Creek is unlikely to uncover these people's names without additional investigation, and ADT has enough details "to riposte swiftly and effectively if the [claims are] groundless." *Fidelity Nat'l Title Ins. v. Intercounty Nat'l Title Ins.*, 412 F.3d 745, 749 (7th Cir. 2005). Simply put, though the "who" of the fraud isn't pleaded by name or job title, there are adequate facts alleged in the complaint to winnow the fraud claims with appropriate particularity under Rule 9(b).

ADT next argues the fraud claims merely amount to breach of contract, with nothing more. Juday Creek responds that the fraud claims are distinct from its contract claim, but its thin argument merely states that its allegations are predicated only on ADT's continued billing while monitoring was suspended and not on any ADT representative's promise that alarm services would pause for a week. The court accepts this winnowing of the complaint's allegations, so it does not reach the argument whether the actual fraud claim must be dismissed by being based on promises of future conduct. What remains falls short of preserving a plausible and separate fraud claim.

"Breaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent," but each party to a contract has "common law rights to breach a contract and pay a rightful amount of compensatory damages." *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000) (citing and quoting *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 983 (Ind. 1993)). Accordingly, a plaintiff "claiming both breach of contract and fraud must prove that the breaching party committed the separate and independent tort of fraud and that the fraud resulted in injury distinct from that resulting from the breach of contract." *Dean V. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010) (citing *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004)). Once more, this isn't the stage for proof, but Juday Creek must plausibly allege a separate fraud claim.

The complaint says Juday Creek contracted with ADT to provide alarm and monitoring services, and that ADT stopped providing these services while continuing to accept payment. By any name this is merely a breach of contract, and nothing within the complaint plausibly distinguishes this to justify a separate fraud claim. Juday Creek expected ADT to provide and monitor the alarm system if it paid, and ADT didn't. Juday Creek still paid for ADT's service.

That was the very nature of their contract as alleged. Juday Creek doesn't argue that it was induced to take some action beyond the contract (it argues payment of services only); nor does it argue that it suffered any separate injury that resulted only from the purported fraud. Juday Creek disclaims any fraud based on the ADT representative's promise to silence the alarm system for only a week and focuses only on the representation presupposed by ongoing billing, and one cannot plausibly assume that billing was not part and parcel of this commercial contract. With no fraud or injury distinct from the alleged breach of contract, Juday Creek's actual and constructive fraud claims must be dismissed.

## CONCLUSION

For these reasons, the court GRANTS IN PART and DENIES IN PART the motion to dismiss [15] and DISMISSES only the actual and constructive fraud claims (counts 3 and 4).

SO ORDERED.

August 19, 2026

*s/ Damon R. Leichty*
Judge, United States District Court